UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



LESLY CONSTANT,

              Petitioner,

    v.

WILLIAM BARR, Attorney General[1],
THOMAS FEELEY, Field Office Director
for Detention and Removal, Buffalo Field
Office, Bureau of Immigration and
Customs Enforcement, JEFFREY
SEARLS, Facility Acting Director Buffalo
Federal Detention Facility

              Respondent.

**DECISION AND ORDER**

1:19-CV-00182 EAW

## **INTRODUCTION**

*Pro se* petitioner Lesly Constant ("Petitioner"), an immigration detainee currently

detained at the Buffalo Federal Detention Facility in Batavia, New York, seeks a *writ of*

*habeas corpus* pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner argues that his continued

detention is unconstitutional and seeks immediate release, or, in the alternative, a bond

hearing before an immigration judge. (*Id.* at ¶¶ 4-5). Petitioner also filed a motion to

---

[1]    Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to
substitute William Barr, Attorney General for the named Defendant, Matthew Whitaker,
Acting Attorney General. "An action does not abate when a public officer who is a party
in an official capacity dies, resigns, or otherwise ceases to hold office while the action is
pending. The officer's successor is automatically substituted as a party." Fed. R. Civ. P.
25(d).

appoint counsel. (Dkt. 2). For the reasons discussed below, the Petition is granted in part and denied in part, and the motion to appoint counsel is denied as moot.

## BACKGROUND

Petitioner was born in Haiti on February 6, 1983. (Dkt. 9 at ¶ 1). When he was three years old, he entered the United States on a B-2 visitor visa[2] which he overstayed, and he has resided in the United States ever since.[3] (*Id.* at ¶¶ 2, 4).

On May 12, 2010, Petitioner pleaded guilty in New York State Supreme Court, Kings County, to one count of first-degree manslaughter and one count of second-degree attempted assault. (Dkt. 5-2 at 6-7). On June 2, 2010, Petitioner also pleaded guilty to four counts of third-degree criminal sale of a firearm. (*Id.* at 8). On July 13, 2010, the state court sentenced Petitioner to a prison term of 10 years for manslaughter, and one to three years for attempted assault. (*Id.* at 6-7). Petitioner was also sentenced to five years for the firearms charges on December 20, 2010. (*Id.* at 8).

On April 1, 2013, Petitioner was issued a Notice to Appear ("NTA") by the United States Department of Homeland Security ("DHS"), charging him with being subject to removal from the United States pursuant to the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States

---

[2]     B-2 visitor visas are nonimmigrant visas for persons who want to enter the United States temporarily for tourism. *Visitor Visa*, Bureau of Consular Affairs, U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visitor.html (last visited Aug. 6, 2019).

[3]     Respondents contend Petitioner "illegally entered the United States at an unknown place, on an unknown date, without having been admitted or paroled after inspection by an Immigration Officer." (Dkt. 5-1 at ¶ 5).

without being admitted or paroled, and pursuant to INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), as an alien who has been convicted of acts which constitute the essential elements of a crime involving moral turpitude. (Dkt. 5-2 at 12). On August 5, 2016, Petitioner was charged with additional grounds of removal pursuant to 8 U.S.C. §§ 237(a)(1)(B), 237(a)(2)(A)(ii), 237(a)(2)(C), and 237(a)(2)(A)(iii). (*Id.* at 15).

On July 26, 2017, an arrest warrant was issued by DHS to take Petitioner into custody, and the next day DHS determined that Petitioner would be detained pending a final administrative determination in his case. (*Id.* at 17-18). By August 7, 2017, custody of Petitioner had been transferred from the New York State Department of Corrections and Community Supervision ("DOCCS") to Immigration and Customs Enforcement ("ICE"), an agency within DHS, and ICE held Petitioner at the Buffalo Federal Detention Facility.[4] (*Id.* at 21). Petitioner requested a review of the custody determination by an immigration judge on August 7, 2017. (*Id.* at 18). Given Petitioner's change of location from the Gowanda Correctional Facility in Gowanda, New York to the Buffalo Federal Detention Facility in Batavia, New York, DHS moved to change venue from the Immigration Court at Napanoch, New York, to the Immigration Court at Batavia, New York. (*Id.* at 16, 20). DHS's motion was granted on August 21, 2017. (*Id.* at 23-25).

A removal hearing was scheduled for September 13, 2017, but Petitioner moved to adjourn it until September 27, 2017, to give Petitioner time to prepare. (Dkt. 5-1 at ¶ 12). On September 27, 2017, the removal hearing was again rescheduled at Petitioner's request

---

[4] Petitioner alleges that he was taken into ICE custody on August 4, 2017 (Dkt. 1 at ¶ 19), but the record is not clear as to the specific day his custody was transferred.

for February 8, 2018, for a full day of trial to allow counsel for Petitioner to file an updated country report and possibly file or amend an I-589 application.[5] (*Id.* at ¶ 13). On February 2, 2018, Petitioner moved for a continuance of his immigration proceedings, which DHS opposed. (Dkt. 5-2 at 28-35). Petitioner's motion was granted; his bond hearing originally scheduled to take place on February 2, 2018, was adjourned until February 28, 2018, and his next trial date was set for May 24, 2018. (*Id.* at 36-37). On February 28, 2018, Petitioner requested a continuance of his bond hearing in light of the issuance of *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), and the bond hearing was adjourned until March 21, 2018. (Dkt. 5-1 at ¶ 16).

On March 21, 2018, the Immigration Judge ("IJ") denied Petitioner's request for a change in custody status, finding that the Supreme Court's decision in *Jennings* divested the Immigration Court of jurisdiction to grant bond. (Dkt. 5-2 at 38).

On May 24, 2018, counsel for Petitioner submitted evidence on Petitioner's behalf. (Dkt. 5-1 at ¶ 19). The IJ requested an updated country report for Haiti. (*Id.*). The trial was continued until July 25, 2018, and additional evidence was submitted by Petitioner as well as a cross-examination of Petitioner conducted. (*Id.* at ¶ 20). The trial was continued until September 20, 2018, for further proceedings. (*Id.*).

On September 20, 2018, Petitioner called an expert on conditions in Haiti as part of Petitioner's application for withholding of removal under the Convention Against Torture ("CAT"). (*Id.* at ¶ 21). On that same date, the IJ orally denied the CAT claim and ordered

---

[5]     An I-589 application is an application for asylum and for withholding of removal.

Petitioner removed from the United States to Haiti. (Dkt. 5-2 at 39). Petitioner's applications for withholding of removal and deferral of removal were also denied. (*Id.*). Petitioner appealed the IJ's order of removal to the Board of Immigration Appeals ("BIA"), and his appeal remains pending before the BIA. (Dkt. 5-1 at ¶ 22). Petitioner remains in custody at the Buffalo Federal Detention Facility. (Dkt. 1 at ¶ 1).

On February 8, 2019, Petitioner filed the instant Petition. (Dkt. 1). He also filed a motion to appoint counsel on February 15, 2019. (Dkt. 2). Respondents submitted their answer on April 4, 2019 (Dkt. 5; Dkt. 6), and Petitioner replied on April 25, 2019. (Dkt. 9).

## DISCUSSION

### I.  Petition

#### A.  Jurisdiction

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases. *See* 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (holding federal courts have jurisdiction to review challenges to pre-removal detention); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases). District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation,

exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

## B. Due Process

The Petition challenges the constitutionality of 8 U.S.C. § 1226(c) as applied to Petitioner. (Dkt. 1). In particular, Petitioner contends that his detention, which has now extended for over two years (from on or about August 7, 2017, to the present), violates due process. He requests immediate release, or, in the alternative, a bond hearing before an IJ. (*Id.* at ¶¶ 4-5). For the reasons that follow, the Court denies Petitioner's request for immediate release, but finds he is entitled to a bond hearing.

The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be deprived of life, liberty or property, without due process of law." U.S. Const. amend. V. "It is well-settled that aliens have rights of procedural due process." *Doherty v. Thornburgh*, 943 F.2d 204, 209 (2d Cir. 1991). "These protections extend even to aliens . . . 'whose presence in this country is unlawful.'" *Id.* (quoting *Mathews v. Diaz*, 426 U.S. 67, 77 (1976)).

In this case, Petitioner has been detained pursuant to § 1226(c) (Dkt. 1 at 3), which "provides for mandatory detention of criminal aliens," *Mapp v. Reno*, 241 F.3d 221, 224 (2d Cir. 2001). An alien detained pursuant to § 1226(c) may seek discretionary release from DHS only if "he is a witness, a potential witness, a cooperator, or an immediate family member or close associate of someone who is acting as a witness, potential witness, or cooperator in an investigation into major criminal activity. No other category of discretionary release exists under the statute." *Sajous v. Decker*, No. 18-CV-2447 (AJN),

2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018), *appeal withdrawn*, 2019 WL 4137822 (2d Cir. May 7, 2019); *see Jennings*, 138 S. Ct. at 847 ("§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes.").

The law regarding the constitutionality of the mandatory detention provided for under § 1226(c) is somewhat unsettled. In *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), the Second Circuit considered an as-applied challenge to § 1226(c) and joined the Third, Sixth, and Ninth Circuits in concluding that, to avoid "serious constitutional concerns," § 1226(c) must be read to include a temporal limitation on detention. *Id.* at 613. The *Lora* court reasoned that, under *Demore*, "for detention under the statute to be reasonable, it must be for a brief period of time." *Id.* at 614. As such, the *Lora* court adopted a bright-line rule that "an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention." *Lora*, 804 F.3d at 616. The Second Circuit further held that the detainee "must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." *Id.* (citing *Rodriguez*, 715 F.3d at 1131).

Subsequently, on February 27, 2018, the Supreme Court issued *Jennings*, 138 S. Ct. 830, which rejected the Ninth Circuit's analysis of § 1226(c). The *Jennings* Court held that it was not a "plausible statutory construction" to interpret § 1226(c) "to include an implicit 6-month time limit on the length of mandatory detention," and concluded that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may

end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Id.* at 846-47. Because reversal of the underlying Ninth Circuit decision was mandated on statutory grounds, the *Jennings* Court expressly declined to reach the petitioner's constitutional claims on the merits, instead remanding to the court of appeals for consideration of those claims in the first instance. *Id.* at 851.[6]

On March 5, 2018, in light of its decision in *Jennings*, the Supreme Court granted *certiorari* in *Lora*, vacated the judgment in that matter, and remanded the matter to the Second Circuit for further consideration. *See Shanahan v. Lora*, 138 S. Ct. 1260 (2018). On remand, the Second Circuit dismissed the case as moot because the petitioner in that matter had been granted a cancellation of removal. *See Lora v. Shanahan*, 719 F. App'x 79, 80 (2d Cir. 2018).

Following *Jennings*, numerous courts in the Second Circuit have addressed as-applied constitutional challenges to immigration detention. These courts have noted that an important difference exists between substantive and procedural due process challenges to an immigrant's confinement. In substantive due process challenges, the court considers whether the length of detention "is so manifestly unreasonable that [the petitioner's] release is required regardless of whether the government has evidence that he is, for example, a danger or a flight risk." *Clerveaux v. Searls*, No. 18-CV-1131, 2019 WL 3457105, at *4

---

[6]     The Ninth Circuit, in turn, has remanded those issues to the district court for it to consider in the first instance. *See Rodriguez v. Marin*, 909 F.3d 252, 257 (9th Cir. 2018). As of yet, the district court has not issued a subsequent decision addressing the parties' constitutional arguments.

n.3 (W.D.N.Y. July 31, 2019); *see Doherty*, 943 F.2d at 209 ("[The petitioner] does not argue that the process under which he was denied bail was unfair or inadequate, but rather, that the very fact that he has been subjected to prolonged detention without bail violates his substantive right to liberty."). In other words, if successful with a substantive due process claim, the petitioner is entitled to be released from custody.

On the other hand, in procedural due process challenges the court does not consider what the substantive outcome of the case should be—*i.e.*, whether the petitioner should be released—but rather considers whether the petitioner is entitled to some sort of process, such as a bond hearing. *See Clerveaux*, 2019 WL 3457105, at *4 n.3 ("[T]his Court considers only whether—seventeen months into [the petitioner]'s detention—the government must finally demonstrate to someone that there is some evidence that [the petitioner]'s detention serves some purpose."); *Vallejo v. Decker*, No. 18-CV-5649 (JMF), 2018 WL 3738947, at *4 (S.D.N.Y. Aug. 7, 2018) ("[T]he Court is compelled to conclude that [the petitioner]'s continued detention without another individualized bond hearing violates his due process rights."), *appeal withdrawn*, 2019 WL 1503029 (2d Cir. Mar. 25, 2019). In this case, Petitioner has raised both substantive and procedural due process challenges. The Court addresses both in turn.

### 1. <u>Substantive Due Process</u>

Petitioner alleges that his prolonged detention has resulted in the violation of his right to substantive due process and requests that he be immediately released. The Court denies the Petition on this ground for the reasons that follow.

"[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings." *Doherty*, 943 F.2d at 209. "It is axiomatic, however, that an alien's right to be at liberty during the course of deportation proceedings is circumscribed by considerations of the national interest." *Id.* If the infringement on an alien's "liberty interest results from a proper exercise of discretion," then a prolonged detention "is not conduct that goes beyond the range of government activity permitted by the Constitution." *Id.* at 211. "[D]etention of an alien 'once removal is no longer reasonably foreseeable' . . . violates the Due Process Clause." *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003). "[O]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

In the instant matter, Petitioner has failed to demonstrate that his removal is not reasonably foreseeable. To the contrary, the IJ entered an order of removal against Petitioner, which he appealed to the BIA (Dkt. 5-1 at ¶ 22), and he would be removed if he withdrew his appeal. Petitioner "may not rely on the extra time resulting" from his appeal "to claim that his prolonged detention violates substantive due process." *Doherty*, 943 F.2d at 211; *see Thompson v. Lynch*, No. 16-CV-6608 (CJS), 2017 WL 344970, at *7 (W.D.N.Y. Jan. 24, 2017) ("Unless and until the circuit court vacates the removal order or otherwise rules in petitioner's favor on the petition for review, petitioner remains a criminal alien subject to removal and subject to lawful mandatory detention in DHS custody under the authority of the INA."). Accordingly, the Court denies the portion of the Petition that rests

on substantive due process grounds as well as Petitioner's associated request for immediate release.

## 2.      **Procedural Due Process**

Petitioner also asserts that his procedural due process rights have been violated and requests a bond hearing. For the following reasons, the Court grants the Petition on this ground.

The Second Circuit has not addressed, post-*Jennings* and post-*Lora*, the standard to be utilized by courts in addressing procedural due process claims for aliens detained pursuant to § 1226(c) in the immigrant habeas context. However, the overwhelming majority of district courts within the Circuit to have addressed the issue have adopted a case-by-case approach where "courts examine each individual's detention circumstances to determine whether it has become 'unreasonable or unjustified.'" *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (quoting *Demore*, 538 U.S. at 532). The case-by-case approach is an "as-applied, fact-based analysis . . . derived from the Supreme Court's decisions in *Zadvydas* and *Demore*[.]" *Sajous*, 2018 WL 2357266, at *10; *c.f. Hechavarria v. Sessions*, No. 15-CV-1058, 2018 WL 5776421, at *7-9 (W.D.N.Y. Nov. 2, 2018) (utilizing both a multi-factor test and the traditional procedural due process analysis articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976)), *enforcement granted sub nom. Hechavarria v. Whitaker*, 358 F. Supp. 3d 227 (W.D.N.Y. 2019); *see Joseph v. Decker*, No. 18-CV-2640(RA), 2018 WL 6075067, at *10 n.7 (S.D.N.Y. Nov. 21, 2018) (concluding that "[t]he *Mathews* test is consistent with the approach of . . . considering immigration-specific factors for the procedural due process analysis," and the majority of

courts in this Circuit seem to have adopted the fact-based inquiry approach), *appeal withdrawn*, No. 19-245, 2019 WL 3334802 (2d Cir. May 1, 2019).

This Court agrees with the overwhelming majority of courts in this Circuit that the multi-factor approach articulated by the court in *Sajous* and other courts within this Circuit is a useful tool for addressing procedural due process claims for aliens detained pursuant to § 1226(c) in the immigrant habeas context. *See Gomes Herbert v. Decker*, No. 19-CV-760 (JPO), 2019 WL 1434272, at *2 (S.D.N.Y. Apr. 1, 2019) (noting that the *Sajous* framework has been "overwhelmingly adopted" in the Southern District of New York (quotation omitted)); *Dukuray v. Decker*, No. 18 CV 2898 (VB), 2018 WL 5292130, at *3 (S.D.N.Y. Oct. 25, 2018) (same). The factors set forth by district courts in this Circuit for a court to consider in determining whether an alien's length of detention has become unreasonable or unjustified, can be summed up as follows:

> (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.[7]

*Cabral*, 331 F. Supp. 3d at 261.

As to the first factor, Petitioner has been detained in immigration custody since August 2017. Thus, "[t]he first and 'most important' . . . factor weighs heavily in favor of

---

[7]    This is not to suggest that other factors cannot be considered by a court in the appropriate case. In other words, it would be inconsistent with the flexible nature of due process, *Jennings*, 138 S. Ct. at 852, to restrict the analysis to hard-and-fast factors with no ability to adapt those factors to the particular facts of a case.

granting the petition." *Bermudez Paiz v. Decker*, No. 18-CV-4759 (GHW) (BCM), 2018 WL 6928794, at *13 (S.D.N.Y. Dec. 27, 2018) (citation omitted). "[C]ourts in this Circuit have generally been skeptical of prolonged detention of removable immigrants, without process, lasting over six months," *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (quoting *Lopez v. Sessions*, No. 18 Civ. 4189 (RWS), 2018 WL 2932726, at *14 (S.D.N.Y. June 12, 2018)), *appeal filed*, No. 18-3714 (2d Cir. Dec. 11, 2018), and "courts have found detention shorter than a year to be unreasonably prolonged as part of procedural due process analysis," *Rosado Valerio v. Barr*, No. 19-CV-519, 2019 WL 3017412, at *4 (W.D.N.Y. July 10, 2019) (collecting cases).

The record before the Court shows Petitioner has been detained for over two years without ever receiving an individualized review of his detention. On July 27, 2017, DHS issued a Notice of Custody Determination stating that Petitioner would be detained pending a final administrative determination in his case without listing the reasons why this determination was made. (Dkt. 5-2 at 18). By August 7, 2017, Petitioner had been taken into ICE custody (*id.* at 21), and on that day Petitioner requested that an IJ review the custody determination (*id.* at 18). The record before the Court does not indicate that Petitioner ever received that individualized review. Although a bond hearing was scheduled to take place on March 21, 2018, the IJ denied Petitioner's request for a change in custody status, finding that the Supreme Court's decision in *Jennings* divested the immigration court of jurisdiction to grant bond. (*Id.* at 38). There is no other evidence before this Court that an individual determination was provided to Petitioner listing specific reasons for his detention. In other words, the record before the Court shows that Petitioner

has been detained for over two years without any individualized determination. This factor weighs heavily in Petitioner's favor.

Respondents contend the second factor in the analysis—which party is responsible for the delay—undercuts a finding of an unreasonable length of detention in Petitioner's case because "Petitioner's continued detention is of his own volition." (Dkt. 6 at 14). For procedural due process claims, when "considering whether [Petitioner] or the Government is responsible for the prolonged proceedings, the Court 'may examine the record to determine whether the alien sought repeated or unnecessary continuances, or filed frivolous claims and appeals.'" *Vallejo*, 2018 WL 3738947, at *4 (quoting *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018)); *see Sajous*, 2018 WL 2357266, at *11 ("[A]liens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute." (quoting *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015))). "[C]ourts should keep in mind that 'aliens should not be punished for pursuing avenues of relief and appeals[,]' but evidence of bad faith delays may cut against them." *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *7 (S.D.N.Y. July 25, 2018) (quotation omitted), *appeal withdrawn*, No. 18-2824, 2019 WL 1377025 (2d Cir. Feb. 5, 2019).

In this case, the record supports a conclusion that a significant portion of the delay between September 13, 2017 (when Petitioner's removal hearing was initially scheduled) and September 20, 2018 (when the IJ issued an order of removal), can be attributed to requests for adjournment made by Petitioner. However, the record does not show that

Petitioner was engaging in bad faith delay tactics. To the contrary, Petitioner's initial requests for continuances were made by his counsel to help him prepare for Petitioner's hearings or to allow for consideration of changes in the law. (*See* Dkt. 5-1 at ¶¶ 12-16). As such, it would not be appropriate to utilize these requests for adjournment to penalize Plaintiff. *See, e.g., Sopo*, 825 F.3d at 1218; *Vallejo*, 2018 WL 3738947, at *4; *Hernandez*, 2018 WL 3579108, at *7; *Sajous*, 2018 WL 2357266, at *11. Moreover, since the order of removal was issued in September 2018, the delay appears attributable to the BIA's consideration of Petitioner's appeal as opposed to any adjournment requests by Petitioner. (*See* Dkt. 6 at 2 ("Petitioner's appeal to the [BIA] remains pending[.]")).

Respondents cite to this Court's decision in *Sigal v. Searls*, No. 1:18-CV-00389 EAW, 2018 WL 5831326, at *6 (W.D.N.Y. Nov. 7, 2018), to support their argument that "Petitioner may end his detention at any time by withdrawing his appeal and complying with the removal order." (Dkt. 6 at 14). However, *Sigal* is distinguishable from the instant matter. The Court's decision in *Sigal* focused on the petitioner's substantive due process arguments because the forms of relief the petitioner sought in his petition and briefing were for immediate release or for the Court to actually conduct a bond hearing. (*See Sigal v. Searls*, No. 1:18-cv-00389-EAW, Dkt. 1 at ¶ 37 (W.D.N.Y. Mar. 28, 2018) (alleging in petition that "Petitioner is therefore entitled to immediate release on his own recognizance or under bond, by order of this court")); *see also Doherty*, 943 F.2d at 209 ("[The petitioner] does not argue that the process under which he was denied bail was unfair or inadequate, but rather, that the very fact that he has been subjected to prolonged detention without bail violates his substantive right to liberty.").

Moreover, the facts in *Sigal* are easily distinguishable from this case. The *Sigal* petitioner had been ordered removed by an IJ before ever being taken into DHS custody, and the BIA affirmed the IJ's decision within about a week after the *Sigal* petitioner was taken into DHS custody. 2018 WL 5831326 at *2. As a result, the entire length of the *Sigal* petitioner's custody in DHS was directly related to his pursuit of an appeal before the Second Circuit with a corresponding stay of removal. As this Court noted in *Sigal*, while a petitioner should not be punished for seeking review of administrative or judicial decisions, "that right does not mean it may be exercised without consequence," *id.* at *6 (citation and quotation omitted), and in fact, the *Sigal* petitioner's removal would not have prevented his pursuit of relief before the Second Circuit, *id.* at *6 n. 5. Thus, the Court in *Sigal* was persuaded that the petitioner's litigation strategy was largely responsible for the length of his detention. In fact, shortly after this Court issued its decision in *Sigal*, the petitioner discontinued his appeal before the Second Circuit, *see Sigal v. Whitaker*, No. 17-2197, Dkt. 92, thus further confirming the Court's opinion concerning the petitioner's litigation strategy. Here, the Court is not similarly persuaded that Petitioner is engaging in a litigation strategy meant to prolong his immigration proceedings—instead, he appears to be legitimately contesting the validity of those immigration proceedings.[8]

As for the third factor, Petitioner has asserted defenses to removal in the immigration proceedings. He has asked for relief under the CAT, applied for asylum, and

---

[8]     This distinction is further highlighted by the fact that the *Sigal* petitioner received an individualized review of his detention setting forth "specific, individualized considerations supporting the decision not to release him from custody," *Sigal*, 2018 WL 5831326, at *7, while Petitioner in the instant matter, as previously discussed, has not.

purports to advance a derivative citizenship claim. (Dkt. 9 at 2-3). "The Court need not inquire into the strength of [Petitioner's] defenses—it is sufficient to note their existence and the resulting possibility that the Petitioner will ultimately not be removed, which diminishes the ultimate purpose of detaining the Petitioner pending a final determination as to whether he is removable." *Sajous*, 2018 WL 2357266, at *11; *see Cabral*, 331 F. Supp. 3d at 261-62 (finding the third factor weighed in petitioner's favor because he asserted several defenses to his removal). Accordingly, this factor weighs in Petitioner's favor.

The fourth factor on the other hand weighs against Petitioner—his detention has not been longer than the time that he spent in prison for the crimes that made him removable. Petitioner was in prison for seven-and-a-half years (Dkt. 5-2 at 17-18), which reflects "the state's judgment of his dangerousness." *Hernandez*, 2018 WL 3579108, at *10.

As far as the fifth factor is concerned, Petitioner contends his confinement at the Buffalo Federal Detention Facility is penal in nature. He alleges several ways in which his detention at the Buffalo Federal Detention Facility is *more* severe than the state prison where he was previously confined. For example, he contends that visits with family members such as his wife and daughter are limited to one hour no-contact visits at the Buffalo Federal Detention Facility, whereas his visits when confined by DOCCS were much lengthier contact visits. (Dkt. 9 at 7). Additionally, "Respondents have failed to rebut [Petitioner]'s contention that his ongoing detention at this facility is indistinguishable from criminal incarceration." *Gomes Herbert v. Decker*, No. 19-CV-760 (JPO), 2019 WL

1434272, at *3 (S.D.N.Y. Apr. 1, 2019). Accordingly, this factor weighs in Petitioner's favor.

The sixth factor, the nature of the crimes Petitioner was convicted of, weighs against Petitioner. Petitioner pleaded guilty to committing the violent crimes of manslaughter and attempted assault, as well as to trafficking firearms. *See Cabral*, 331 F. Supp. 3d at 262 (finding sixth factor weighed against petitioner when convicted multiple times and crimes included attempted robbery and criminal possession of a weapon).

However, the final factor, whether the petitioner's detention is near conclusion, weighs in Petitioner's favor. To the Court's knowledge, the BIA has not yet issued a ruling on Petitioner's appeal, and there is no indication of when it will do so. *See Dukuray*, 2018 WL 5292130, at *5 ("[T]here is 'significant reason to believe that [petitioner's detention] will continue . . . because . . . he would remain detained throughout the course of an appeal by either side.'" (second alteration in original) (quoting *Lett*, 346 F. Supp. 3d at 387)).

Thus, the Court acknowledges that some of the factors favor Petitioner and some do not. However, on balance and particularly in view of the length of the detention and the circumstances surrounding that detention, the Court finds that Petitioner's continued detention without a bond hearing is constitutionally unjustified. *See Arce-Ipanaque v. Decker*, No. 19-CV-1076 (JMF), 2019 WL 2136727, at *2 (S.D.N.Y. May 15, 2019) ("At bottom, the minimal burden that a bond hearing would place on the Government is far outweighed by [the petitioner]'s interest in ensuring that his continued detention is justified." (quotation and original alteration omitted)).

### 3.    Process Due to Petitioner

It is well established within this Circuit that when a court determines the length of a petitioner's detention pursuant to § 1226(c) is unjustified, due process requires that he be given a bond hearing where an individualized determination can be made as to whether he should remain confined for the duration of his immigration proceedings. *See, e.g., Bermudez Paiz*, 2018 WL 6928794, at *14 (holding petitioner was entitled to a bond hearing after finding his detention was unreasonably prolonged); *Cabral*, 331 F. Supp. 3d at 262-63 (same); *Hernandez*, 2018 WL 3579108, at *10 (same). "The only remaining question concerns the burden of proof at the bond hearing." *Bermudez Paiz*, 2018 WL 6928794, at *15.

Prior to *Jennings*, the Second Circuit required in bond hearings that "the government establish[ ] by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." *Lora*, 804 F.3d at 616. In *Jennings*, the Supreme Court held "that § 1226 itself does not require the government to carry the clear and convincing evidence burden . . . . However, the Supreme Court left open the question of what the Constitution requires for aliens detained pursuant to § 1226(c)." *Cabral*, 331 F. Supp. 3d at 262 n.6 (citing *Jennings*, 138 S. Ct. at 847, 851). The vast majority of courts in this Circuit to have considered this issue have found "that imposing a clear and convincing standard would be most consistent with due process." *Hernandez*, 2018 WL 3579108, at *11; *see Bermudez Paiz*, 2018 WL 6928794, at *15 ("[T]he overwhelming consensus of judges in this District—both before and after *Jennings*—is that once an alien's immigration detention has become unreasonably prolonged, he or she is entitled to a bond hearing at

which the government bears the burden to demonstrate dangerousness or risk of flight by clear and convincing evidence." (quotation omitted)); *see also Darko v. Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018) (collecting cases). "While *Lora* is no longer binding authority, every court to have considered" the issue of who carries the burden at immigration bond hearings "has agreed with [its] persuasive logic—under the Due Process Clause of the Fifth Amendment, it is the Government's burden to justify the detention of an immigrant at a bond hearing[.]" *Velasco Lopez v. Decker*, No. 19-CV-2912 (ALC), 2019 WL 2655806, at *3 (S.D.N.Y. May 15, 2019) (collecting cases), *appeal filed*, No. 19-2284 (2d Cir. July 23, 2019). This Court agrees and finds due process requires that Petitioner is entitled to a bond hearing where the government must demonstrate dangerousness or flight risk by clear and convincing evidence.

Additionally, the Court finds that both due process and BIA precedent require the IJ to consider ability to pay and alternative conditions of release in setting bond. *See Abdi v. Nielsen*, 287 F. Supp. 3d 327, 335-39 (W.D.N.Y. 2018); *see also Hernandez v. Sessions*, 872 F.3d 976, 991 & n.4 (9th Cir. 2017) ("A bond determination that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests."); *Arce-Ipanaque*, 2019 WL 2136727, at *3 (collecting cases); *Lett*, 346 F. Supp. 3d at 389 ("The Court agrees with Petitioner that an immigration bond hearing that fails to consider ability to pay or alternative conditions of release is constitutionally inadequate."); *Hernandez*, 2018 WL 3579108, at *12 ("[T]he Due Process Clause requires than an IJ

consider ability to pay and alternative conditions of release in setting bond." (quotation and alteration omitted)).

## II. Motion to Appoint Counsel

Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants, *Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc.*, 865 F.2d 22, 23-24 (2d Cir. 1988), and the assignment of *pro bono* counsel in civil cases is within the trial court's discretion. *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984). The court must evaluate "the merits of [the] plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

In the instant matter, the Court finds that Petitioner adequately gathered the facts and dealt with the legal issues presented without the assistance of counsel as is demonstrated by the Court granting the Petition in part. Further, assignment of counsel at this juncture would be futile because the case will be closed upon issuance of this Decision and Order. Accordingly, the Court denies Petitioner's motion for appointment of counsel as moot.

## CONCLUSION

For the foregoing reasons, the Petition (Dkt. 1) is granted in part and denied in part, and the motion to appoint counsel (Dkt. 2) is denied as moot. In order to comport with the requirements of the Fifth Amendment's Due Process Clause, the Court orders Respondents

to afford Petitioner a bond hearing consistent with the procedures outlined in this Decision and Order within 14 days of its entry. The Clerk of Court is instructed to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:          September 9, 2019
                Rochester, New York